IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PHILLIP SMITH,                          )               8:19CV298
                                        )
            Plaintiff,                  )
                                        )
      v.                                )           MEMORANDUM
                                        )           AND ORDER
WILLIAM W. IVERSON; MARK                )
LONG; ALAN MOORE; JEFF                  )
MULBERRY; SALINE COUNTY;                )
CITY OF WILBER; TAD EICKMAN;            )
ADAM DRAKE; TROY MILLER;                )
KOREEN MULLEN; MARSHALL                 )
LUX; and BARB BRUNKOW,                  )
                                        )
            Defendants.                 )
_____

    Plaintiff, Phillip Smith ("Smith"), an inmate at USP Leavenworth, filed his Complaint (Filing 1) on July 5, 2019. Smith has been granted leave to proceed in forma pauperis and he has paid the required initial partial filing fee. The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

    Smith claims he did not receive adequate medical treatment at the Saline County jail while he was being detained pending trial on federal drug charges.[1] He seeks to recover compensatory and punitive damages from ten named defendants,[2] all of whom are sued in their individual and official capacities:

---

[1] *See United States v. Phillip Eugene Smith*, Case No. 4:18CR3043.

[2] The docket sheet lists twelve defendants, including Saline County and the City of Wilber, which are included in the caption to Smith's Complaint. The caption also includes the United States Marshal's Service, which is not listed as a defendant on the docket sheet.

1.      William W. Iverson ("Iverson")
        Supervisory Deputy, U.S. Marshals Service
        Metro Fugitive Task Force

2.      Mark Long ("Long")
        Deputy, U.S. Marshals Service
        Metro Fugitive Task Force

3.      Alan Moore ("Moore")
        Saline County Sheriff

4.      Jeff Mulberry ("Mulberry")
        Saline County Jail captain

5.      Adam Drake ("Drake")
        Saline County Jail administrator

6.      Dr. Troy Miller ("Miller")
        Saline County Jail outside medical provider

7.      Koreen Mullen ("Mullen")
        Saline County Jail nurse

8.      Tad Eickman ("Eickman")
        Saline County Attorney

9.      Marshall Lux ("Lux")
        Nebraska State Ombudsman

10.     Barb Brunkow ("Brunkow")
        Assistant Ombudsman

(Filing 1, pp. 2-3, 16-18)

Smith alleges he was arrested by the Central Nebraska Safe Streets Drug Task Force on April 18, 2018,  and turned over the United States Marshals Service two days later.[3] On the evening of April 20, 2018, he was transported to the Saline County jail.

---

[3] Smith's initial appearance was held on April 20, 2018, and a detention order was entered. *See* Case No. 4:18CR3043, Filing 10.

Smith alleges he first saw Nurse Mullen on April 23, 2018, at which time he told her that his right collarbone was broken. This injury had occurred almost six months earlier, on October 31, 2017, during a prior arrest. Smith alleges he also informed Mullen that he required daily prescription medication, including Flomax and Avodart for prostate problems, and Amlodipine for high blood pressure. Smith complains he did not receive the medicine until one week later, on April 30, 2018, and alleges that in the interim he was "housed in solitary confinement for complaining about headaches and dizziness, requesting my blood pressure be checked because it had been over a week since my last dose of medication, and for not receiving any medical treatment for said broken collarbone." (Filing 1, pp. 36-40)

Smith alleges he then began submitting inmate request forms to medical staff on a daily basis complaining about the lack of treatment for his broken collarbone. (Filing 1, p. 39) Inmate request forms attached to the complaint include the following:

- 5/4/18. Smith complains he is having a lot of pain and discomfort from his right collarbone which prevents him from sleeping at night, and states he was scheduled for surgery on 4/20/18. Nurse (Mullen?) responds: "Will fax for records for facility MD to review. (Filing 1-1, p. 1)

- 5/5/18. Smith complains he is experiencing extreme pain from his broken collarbone and cannot sleep. The nurse responds: "Avoid activity that causes pain/discomfort, Tylenol/Ibuprofen for pain." (Filing 1-1, p. 2)

- 5/6/18. Smith asks if the U.S. Marshal can be contacted about getting some type of treatment for the broken collarbone. The nurse responds as before. (Filing 1-1, p. 3)

- 5/8/18. Smith complains he is "starting to experience neck and chest pain from my right side of my upper torso around my right collarbone area. The nurse responds: "Will have MD review your records and proceed from there. Continue with Tylenol/ Ibuprofen for pain. (Filing 1-1, p. 4)

- 5/8/18. Smith states he was seen by Dr. Choy, Dr. Frey, and Dr. Bowling before being scheduled for surgery on 4/20/18. The nurse responds: "have faxed for your records

& request for surgery schedule you may have had. At this time it is MD expertise to give orders as he feels. (Filing 1-1, p. 5)

- 5/8/18. Smith says he does not appreciate "the lies and documentation about me playing basketball" and generally complains about the lack of adequate medical attention. The nurse responds: "You have been seen by MD. Awaiting your records of need for surgery. MD will then review. Documentation of you playing basketball was done when I was not here. You are receiving medical attention." (Filing 1-1, p. 6)

- 5/9/18. Smith complains he is experiencing sharp pain from the top of his right pectoral muscle toward the middle of his chest. The nurse responds: "Tylenol or Ibuprofen available off med cart for pain. Avoid activity that causes pain/discomfort." (Filing 1-1, p. 7)

- 5/10/18. Smith complains he is still experiencing extreme pain and discomfort despite taking ibuprofen, and demands surgery based on his doctors' recommendations. The nurse responds: "MD will review your records and will proceed from there. Tylenol or Ibuprofen for pain." (Filing 1-1, p. 8)

- 5/11/18. Smith complains he still has pain in his neck, chest and collarbone area, and is starting to feel numbness in the fingers of his right hand. He also inquires about MD's review of his medical records. The nurse responds: "Advised you of MD expertise opinion. Use Tylenol or Ibuprofen off cart for pain." (Filing 1-1, p. 10)

- 5/11/18. Smith states that "the medical assessment by the jail's MD is not acceptable." The nurse responds: "USM faxed for approval to see jail MD." (Filing 1-1, p. 12)

- 5/13/18. Smith states he is having complications from his broken collarbone and wants to be seen medically. The nurse responds as before. (Filing 1-1, p. 11)

- 5/14/18. Smith again states that "the medical assessment by the MD is not acceptable." The nurse responds: "You will be seen by facility MD when he is here next." (Filing 1-1, pp. 13, 15)

- 5/14/18. Smith files a grievance stating that "the medical assessment by the MD is not acceptable." The response (signed by Jail Administrator Drake?) states: "You have seen our doctor twice. We trust and utilize his expertise." (Filing 1-1, pp. 14, 16)

Smith alleges he was seen by Dr. Miller on May 16, 2018, and was told that he would not receive surgery for his broken collarbone "anytime soon," and that "U.S.M.S. said you'll get your surgery when you get to where you're going," i.e., prison. Smith alleges Dr. Miller told him his shoulder was "fine without even examining the area." (Filing 1, pp. 41-42) The doctor's notes for that jail visit, which are attached to Smith's Complaint, read as follows:

> Phillip is in here with his clavicle issue again. He wants surgery on it. We have been able to get most of the records from his orthopedic evaluations over the past year. Basically the story goes, he was running away from law enforcement, fell, fractured his clavicle. Evaluations revealed it to be stable. Basically sent him to jail with a sling. Subsequent to getting out of jail, went and saw Ortho, had a concern for a nonunion, was offered a surgery. He stated that he would wait until he had insurance and come back and have the surgery. Did schedule surgery and then failed to show. Then he showed back up with a different surgeon. Different surgeon said, "You know, it's probably not surgical at this point. Let's monitor it and see how you do," and that is where it was left at. Phillip is not happy with this answer. I have seen him previously. His range of motion is intact in that shoulder. I could not produce any tenderness either. I explained all of this to him, and also the fact that he has been witnessed using that arm normally without any difficulty or issues. He is going to file multiple complaints, sounds like the ACLU is involved. Sounds like he is going back on the initial arrest as far as who is responsible for all this. I told him at this point I would recommend continued range of motion therapy, Tylenol and ibuprofin. With further evaluation pending.
>
> ASSESSMENT: History or right clavicle fracture.
>
> PLAN: Reassurances given. Nonsurgical at this point. Further evaluation pending with Ortho at a date to be determined.

(Filing 1, p. 73)

Smith alleges he was complaining about pain on May 17, 2018, and was transported to the emergency room at the Crete Medical Center. The ER doctors allegedly "concured [*sic*] close displaced fracture of right clavicle with non-union 'surgery'." (Filing 1, p. 43)

However, documentation of this encounter merely includes diagnoses of "chest wall pain" and "closed displaced fracture of right clavicle with nonunion, unspecified part of clavicle; subsequent encounter." No medication or treatment was prescribed; Smith was directed to follow-up with Dr. Miller. (Filing1-3, p. 3)

On May 20, 2018, Smith filed a grievance about not receiving approval for surgery to repair his broken collarbone. The response (signed by Drake?) was: "USMS have been contacted about this situation. We stand by our doctor's decision." (Filing 1-1, p. 19) On May 22, 2018, Smith submitted an identical complaint to medical staff. The nurse responded: "USM's have been made aware of your situation. It is the MD's knowledge and expertise on medical issues." (Filing 1-1, p. 20)

On May 24, 2018, at the request of the Saline County jail administrator, Deputy U.S. Marshal Long forwarded Smith's medical records to USMS headquarters for a second opinion as to whether clavicle surgery was needed at that time. (Filing 1, p. 61)

On May 25, 2018, Smith filed another grievance, stating: "MD hasn't did anything concerning my broken right cervical, he hasn't even examined or even looked at it. I was just told in a brief 2 min visit with him on the 15th [sic] May that I wouldn't be receiving surgery anytime soon. That was it." The response (signed by Sheriff Moore?) stated: "You have seen our doctor and your information has been forwarded to the US Marshals." (Filing 1-1, p. 21)

On May 29, 2018, Smith submitted another inmate request form to medical staff complaining about swelling in his right arm and loss of feeling in his fingers. The nurse responded: "USM is aware of the situation. You have been seen by facility MD. Ibuprofen or Tylenol on med cart for pain." (Filing 1-1, p. 22)

The request for surgery was denied on May 31, 2018, with the reviewing physician, Ulana Bodnar, MD, FACP, stating:

> This is a 50 year old who sustained a closed fracture of his right distal clavicle on 31 October 2017. Up until December 2017, the prisoner was seeing an orthopedic surgeon who felt that if the prisoner was having too much pain, a surgical procedure could be done. However, there was no urgency to the procedure and according to the surgeon, the "operation is the same today as it

is any year" (note from 29 December 2017). The prisoner then saw another orthopedic surgeon in early 2018 apparently on the recommendation of his primary care provider. At the last visit on 19 March 2018, this second orthopedic surgeon recommended placing a plate in the fracture since it had not healed (i.e., non-union) and then removing the plate in future. It is unclear if surgery was ever scheduled, and the prisoner entered USMS custody on 18 April 2018.

On 16 May 2018, the facility physician's note documents full range of motion of the affected shoulder and no tenderness could be reproduced on physical examination. In addition, various documentation has been reviewed from the facility since incarceration which indicates the prisoner has little difficulty using his right shoulder and right arm - he is able to play basketball and wipe tables. Nonetheless, the second orthopedic surgeon was contacted today regarding the urgency of the surgery even though all indications pointed to the fact that surgery was not of an urgent nature. The orthopedic surgeon's office (the assistant, Deirdra) stated that the surgery could wait, it was not urgent, and that the patient was functional.

Therefore, based on all of the above information, the clavicular surgery is denied at this time. Please return this request for reconsideration if clinically indicated in future.

(Filing 1, p. 64)

Smith alleges he responded to this denial letter on June 5, 2018, and emailed to the USMS reviewing physician "full clinical reports ... of all five (5) doctors that recommended surgery ...." (Filing 1, pp. 45-46) Smith stated in his response that the denial letter "failed to mention that I went to Crete Area Medical Center on May 17th the day after I seen facility medical doctor here at Saline County Jail. I have been complaining about chest pain and numbness in right arm and fingers. The ER doctor determined after a EKG, Lab and X-ray that I test positive for chest pain due to broken right clavicle and recommended closure of said clavicle." Smith claimed, "I've only seen [Dr. Miller] twice and [he] has never examined said area injured and still has not till this day." Smith also denied he was playing basketball at the jail. (Filing 1, p. 65)

On June 14, 2018, Smith was sent to the Leavenworth Detention Center for medical evaluation. (Filing 1, pp. 39, 46) On July 18, 2018, Smith had a consultative exam at

Providence Medical Orthopedics in Kansas City, Missouri. (Filing 1, p. 48) Smith returned to the Saline County jail on July 19, 2018, but was sent back to the Leavenworth Detention Center on August 2, 2018. (Filing 1, pp. 48-49) Surgery to repair the broken collarbone was performed on September 25, 2018, at the Providence Medical Center. (Filing 1, p. 50) Smith complains he did not receive prescribed pain medication or physical therapy after being returned to the Saline County jail on October 31, 2018. (Filing 1, pp. 50-51)

Smith alleges "the inadequate medical care and the denial of medical treatment and surgery directly affected the integrity of my physical and mental capacity. Additional ligiment [*sic*] damage, and blood vessel and nerve damage was sustained, as well as severe emotional distress and mental anguish ...." (Filing 1, p. 57)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973

(8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF CLAIMS

Smith alleges in his Complaint that "[t]his action arises under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; under federal law, specifically, 42 U.S.C. §§ 1983 and 1988;[4] under the Nebraska Political Subdivision[s] Tort Claims Act; under Neb. Rev. Stat. § 13-901 et seq.,[5] and under Nebraska common law for intentional and/or negligent infliction of emotional distress, conversion, negligent supervision, gross negligence, and civil conspiracy." (Filing 1, p. 19)

### A. Federal Claims

#### 1. Civil Rights Act (42 U.S.C. § 1983)

Section 1983 does not itself create substantive rights, but "merely provides remedies for deprivations of rights established elsewhere." *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Moore, Mulberry, Drake, Mullen, and Eickman are county officials or employees, and, as such, are subject to suit in their individual capacities under § 1983. They may also be sued in their official capacities, but "[a] suit against a government officer in his official

---

[4] 42 U.S.C. § 1988 is a procedural statute which provides for a discretionary award of attorney's fees to the prevailing party a § 1983 action, but which does not create an independent federal cause of action for the violation of federal civil rights. *See Jones v. Carter*, No. 8:19CV288, 2019 WL 3429821, at *7 (D. Neb. July 30, 2019).

[5] Sections 13-901 to 13-928 constitute the Political Subdivisions Tort Claims Act.

capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch*, 627 F.3d at 1257 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on an official-capacity claim alleged against an official or employee of Saline County, Smith must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton* ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its

inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). "Generally, an isolated incident of alleged ... misconduct ... cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).[6]

Smith has attempted to allege all three theories of recovery, but his allegations are mere legal conclusions.[7] "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Dr. Miller is alleged to be an outside medical provider who is employed by the Crete Area Medical Center. (Filing 1, p. 16) Independent contractors may act under color of state

---

[6] Furthermore, municipal liability cannot succeed as a matter of law in the absence of an underlying constitutional violation by an individual. *See Corwin*, 829 F.3d at 700; *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").

[7] The court is not required to accept the truth of Smith's conclusory allegations that "Defendant Alan Moore in his capacity as sheriff and supervisor of the Wilber/Saline County jail ... implicitly or explicitly adopted and implemented careless and reckless policies, customs or practices that included, among other things allowing employees of Wilber/Saline County jail to purposely deny medical treatment without lawful justification," that Moore's "failure ... to adequately train and supervise the defendants Mulberry, Drake, Mullen, and Miller amounts to deliberate indifference to the rights of Plaintiff not to be deprived [of] liberty and to be free from cruel and unusual punishments inflicted under the fifth, eighth, and fourteenth amendments to the Constitution of the United States," and that Moore "failed to adequately supervise the defendants Mulberry, Drake, Mullen, and Miller." (Filing 1, pp. 24-26, 53) *See Twombly*, 550 U.S. at 555 (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

law. *See Cotton v. Douglas Cty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *1 n. 2 (D. Neb. Oct. 5, 2016); *West v. Atkins*, 487 U.S. at 55-56 (holding that a prison physician who furnishes medical services to state prison inmates as part of his contractual duties to that state acts under color of state law for the purposes of § 1983). When a government contracts with a third party to fulfill a constitutional duty, such as providing medical care, official capacity claims against the third party's employees are treated as claims against the third party itself. *Proctor v. Foltz*, No. 4:18-CV-04015, 2019 WL 137611, at *3 (W.D. Ark. Jan. 8, 2019); *Cannady v. Cradduck*, No. 5:16-CV-05039, 2016 WL 4432704, at *2 (W.D. Ark. Aug. 18, 2016). Thus, the official-capacity claim alleged against Dr. Miller is not a claim against Saline County, but, rather, a claim against the Crete Area Medical Center ("CAMC").[8]

"However, a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993). "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Id.* at 976. CAMC "cannot be held liable under § 1983 on a respondeat superior theory." *Id.* (quoting *Monell*, 436 U.S. at 694). In other words, the mere fact that CAMC employed Miller does not make CAMC liable under § 1983. Because Smith does not allege that CAMC had a policy or custom that contributed to the alleged violation of his constitutional rights, or that Miller was a final policymaker for the corporation, no actionable § 1983 claim is stated against CAMC.

Lux and Brunkow are state employees, who can be sued in their individual capacities under § 1983. The official-capacity claims against the them must be dismissed, however, because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, the Eleventh Amendment bars claims for damages that are brought in federal court by private

---

[8] It is not alleged that Dr. Miller has final authority to establish policy for Saline County with regard to medical treatment at the jail. *See Washington v. Esch*, No. 8:17CV6, 2017 WL 2312877, at *1 (D. Neb. May 24, 2017) ("Even assuming [the jail doctor] has discretionary authority regarding individual treatment plans, this does not make the County liable for her actions.").

parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).

Finally, Iverson and Long are federal employees, who are immune from suit in their official capacities under § 1983. It is well established that, absent an express waiver, the doctrine of sovereign immunity bars a plaintiff's claim for money damages against the United States, its agencies, and its officers in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). No such waiver of sovereign immunity applies in this case. Although § 1983 does not apply to persons acting under color of federal law, a federal official may be held personally liable for inflicting constitutional injuries. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395-97 (1971). An action under *Bivens* is almost identical to an action under § 1983. *Mendoza v. United States Immigration & Customs Enf't*, 849 F.3d 408, 416 n. 3 (8th Cir. 2017).

In summary, the court will dismiss all official-capacity § 1983 claims for failure to state a claim upon which relief may be granted.[9] The court will next analyze the individual-capacity § 1983 claims alleged in Smith's Complaint.

## a. Inadequate Medical Treatment

A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment's prohibition against cruel and unusual punishment, while a pretrial detainee's challenge to such conditions is analyzed under the due process clause of the Fifth Amendment (with respect to federal actors) or the Fourteenth Amendment (with respect to state actors). *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). This makes

---

[9] The official-capacity claims against Moore, Mulberry, Drake, Mullen, and Eickman fail because Smith has not alleged sufficient facts to show that an official policy, custom, or failure to train and supervise these Saline County officials or employees contributed to the alleged violation of Smith's constitutional rights. Similarly, the official-capacity claim against Dr. Miller fails because the Complaint does not contain any facts showing that his alleged employer, CAMC, caused any injury to Smith. The official-capacity claims against Lux and Brunkow, and against Iverson and Long, fail because the State of Nebraska and the United States Marshals Service are immune from suit for damages under § 1983.

little difference as a practical matter, though, because pretrial detainees are entitled to the same protection as imprisoned convicts. *See Davis v. Oregon County*, 607 F.3d 543, 548 (8th Cir. 2010). The Eighth Circuit has stated that for pre-trial detainees, courts should "apply the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts." *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir.2005).

"Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006); *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997). A medical condition is "objectively serious" if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need. *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir.2014). The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. *Grayson*, 454 F.3d at 808; *Moore*, 123 F.3d at 1086. "[T]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

"[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006). "When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, 827 F.3d 749, 756–57 (8th Cir. 2016); *see Brown v. Doel*, No. 4:18CV3020, 2018 WL 4055264, at *4 & n. 5 (D. Neb. Aug. 24, 2018) (citing additional cases); *Mixon v. Omaha Police Dep't Officers*, No. 8:17CV325, 2019 WL 2143882, at *4-5 (D. Neb. May 16, 2019) (finding that pro se plaintiff stated plausible claim for relief against jail's medical employees who allegedly failed to provide necessary seizure medication, resulting in injuries to plaintiff).

Smith alleges he informed nurse Mullen on April 23, 2018, that he required daily prescription medication for prostate problems and high blood pressure, but did not receive the medication until 7 days later. Smith alleges he experienced headaches and dizziness without the medication (presumably, the Amlodipine to control his high blood pressure).

While this alleged delay and resulting injury could form the basis for a § 1983 claim, there are no facts alleged in Smith's Complaint (or set out in the Complaint's attachments) to indicate that Mullen or any other individual defendant was responsible for the delay.

"To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *see Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (complaint was properly dismissed because plaintiff failed to allege facts supporting any individual defendant's personal involvement or responsibility for violations); *see also Iqbal*, 556 U.S. at 679 (plaintiff must plead factual content that allows court to draw reasonable inference that defendant is liable for alleged misconduct); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (conclusory charge that defendants were deliberately indifferent to plaintiff's serious medical needs did not state *Bivens* claim). Smith's conclusory allegation that "in concert with other defendants, ... Miller and Mullen unjustifiably denied plaintiff adequate medical treatment" (Filing 1, p. 33) is not sufficient to state a claim under § 1983.

Smith also alleges he did not receive pain medication or physical therapy after returning to the Saline County jail on October 31, 2018, approximately one month post-surgery. The constitutional obligation to provide medical care to those in custody may be violated when officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). *See Majors v. Baldwin*, 456 Fed. App'x 616, 617 (8th Cir. 2012) (unpublished per curiam) (holding plaintiff had established deliberate indifference claim where defendants withheld prescribed pain medication and did not provide adequate post-operative treatment).

Again, however, there are no facts alleged to show that any individual defendant was responsible, nor are there any facts showing that the pain medication and treatment were knowingly or intentionally withheld. Moreover, it is not alleged that there was any resulting injury. *See Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) (inmate claiming deliberate indifference based on delay in treatment must allege that delay caused harm); *Kenyon v. Dooley*, 605 Fed. App'x 581, 582-83 (8th Cir. 2015) (unpublished) (though plaintiff experienced pain in the 36 hours between his first surgery and when he was given pain medication, and 38 hours between his second surgery and medication, he failed to allege that he suffered any detrimental effect as a result of that delay; also, there was no evidence

that the delay in providing the occupational therapy recommended by his surgeon resulted in preventable harm).

A jail doctor does not act with deliberate indifference when, in an exercise of his professional judgment, he concludes that an inmate will not be placed at risk by foregoing a particular course of treatment, including surgery. *See, e.g., Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009) (holding defendant who decided to postpone x-ray based on medical judgment that injury was not urgent entitled to summary judgment); *Blondheim v. County of Olmsted*, 47 Fed. App'x 766 (8th Cir. 2002) (unpublished) (doctors at correctional facility were not deliberately indifferent by treating inmate's torn ACL conservatively over 4 years, mainly with Tylenol and ace bandages, even though they knew outside orthopedic surgeon had recommended surgery); *Dieteman v. Cnty of Lancaster*, 2015 WL 8334994, at *5 (D. Neb. Dec. 8, 2015) (holding that even if prison doctor believed inmate had an ACL injury, he did not act with deliberate indifference by declining to direct that the inmate receive surgery); *Washington*, 2017 WL 5195208, at *5-8 (holding jail doctor was not deliberately indifferent in deferring surgery on inmate's hip).[10]

Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of deliberate indifference. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) ("At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation."); *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (stating that "an inmate's mere disagreement with the course of his medical treatment fails to state a claim of deliberate indifference").

Accepting as true the factual allegations contained in Smith's Complaint and giving him the benefit of all reasonable inferences that can be drawn from those allegations, *see Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) (stating Rule 12(b)(6) standard

---

[10] The decision of whether to direct that an inmate receive surgery is particularly complicated when the inmate is a pretrial detainee. Many courts have recognized that correctional officials and physicians may consider the fact that pretrial detainees might be released or transferred to another facility with little warning when deciding whether surgery is an appropriate treatment option. *See Washington*, 2017 WL 5195208, at *8 (citing cases).

of review), the court finds there is a plausible claim for relief stated against Dr. Miller based on his alleged failure to examine Smith's shoulder to determine if immediate surgery was indicated to repair the fractured clavicle. *See, e.g., Burton v. Lynch*, 664 F. Supp. 2d 349, 364-65 (S.D.N.Y. 2009) (denying motion to dismiss deliberate indifference claim against prison doctor for failure to examine plaintiff's elbow, which required surgery six months later); *cf. Jackson v. Buckman*, 756 F.3d 1060, 1066-67 (8th Cir. 2014) (affirming summary judgment in favor of jail doctor whose examination of plaintiff's stomach was not "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.") (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1141 (8th Cir. 1997)).

"Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature." *Dadd*, 827 F.3d at 755 (8th Cir. 2016) (quoting *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1055 (8th Cir. 1989)). "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (emphasis in original)). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment ...'." *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). Smith alleges he sustained additional damage to ligaments, and also blood vessel and nerve damage, as a result of the delay in receiving surgery.

### b. Falsification of Medical Records

Smith alleges that "U.S.M. Deputy Mark Long along with Dr. Troy Miller and Saline County jail nurse Koreen Mullen constructed and misappropriated my medical records to present inaccuracies and false truths with the sole purpose of denying me surgery and medical treatment ... which was very much needed." (Filing 1, p. 45) Falsification of medical records, in and of itself, generally will not give rise to a § 1983 claim. *See Ruggiero v. Canfield*, No. 14-CV-00307A(F), 2017 WL 9485692, at *15 (W.D.N.Y. Mar. 23, 2017), *report and recommendation adopted*, No. 14-CV-307-A(F), 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017); *Phillips v. Borders*, No. EDCV 16-01568-MWF (JDE), 2017 WL 10543562, at *5 & n. 1 (C.D. Cal. May 5, 2017). However, "a showing of deliberate refusal to provide

medical attention, ... coupled with falsification of medical records may give rise to an Eighth Amendment violation ... cognizable under 42 U.S.C. § 1983." *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997); *see also Spradley v. LeFlore Cty. Det. Ctr. Pub. Tr. Bd.*, 764 Fed. App'x 692, 702 (10th Cir. 2019) ("Although falsifying medical records can support an inference of deliberate indifference, we have allowed for such an inference only in combination with 'deliberate refusal to provide medical attention, as opposed to a particular course of treatment.'") (quoting *Green*, 108 F.3d at 1304).

The USMS reviewing physician, in denying the initial request for surgery on May 31, 2018, clearly relied upon Dr. Miller's report in which he stated that he had examined Smith's right shoulder and found full range of motion with no tenderness. Smith claims Dr. Miller did not even look at his shoulder before telling him that he would not be getting surgery anytime soon. While Dr. Miller's allegedly false report regarding his examination of Smith may support of finding of deliberate indifference, there are no allegations showing that Long or Mullen had any knowledge that the report was untruthful, nor are there any facts alleged to show that they otherwise "present[ed] inaccuracies and false truths" with the aim of denying Smith his surgery.

### c. Conspiracy

Smith further alleges that "[t]he defendants in the aforementioned incidents subsequently participated in a common design through concert of action to protect fellow defendants Long, Miller, and Mullen by making overtly false statements in their reports regarding the circumstances surrounding the aforementioned incidents." (Filing 1, pp. 31-32)

To establish a conspiracy under § 1983 or *Bivens*, Smith must prove: "(1) that the defendants conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured him." *Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018) (quoting *Bonenberger v. St. Louis. Metro. Police Dep't*, 810 F.3d 1103, 1109 (8th Cir. 2016)).

"[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id.*; see *Duvall v. Sharp*, 905 F.2d

1188, 1189 (8th Cir. 1990) (per curiam) ("To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end."). Smith's Complaint contains no facts to indicate there was a conspiracy among Long, Miller, and Mullen, or any other defendant.

### d. Libel and Emotional Distress

Smith alleges, as part of his conspiracy claim, that "in committing the aforementioned acts each defendant directly and proximately injured, damaged, libeled, and caused emotional distress to the Plaintiff herein." (Filing 1, p. 32) A § 1983 action cannot be predicated upon the theory of slander, defamation, or libel. *Sabot v. North Dakota*, No. 1:17-CV-069, 2018 WL 3354880, at *2 (D.N.D. July 9, 2018) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Similarly, there is no recognized constitutional claim for intentional infliction of emotional distress. *Knight v. Chatelain*, No. 8:19CV206, 2019 WL 2464789, at *3 (D. Neb. June 13, 2019); *see Moore v. City of Chicago*, No. 05 C 5868, 2008 WL 516338, at *4 (N.D. Ill. Feb. 20, 2008) ("[W]hile damages for emotional distress may be recovered in a § 1983 action, intentional infliction of emotional distress is not itself a cognizable constitutional claim."); *Wiggins v. Steiner*, No. C 96-1982 VRW, 1996 WL 432327, at *1 (N.D. Cal. July 29, 1996) ("[A]lleged infliction of emotional distress may be the basis for a state tort claim, but it is not the basis for a constitutional claim for damages.").

### e. Supervisory Liability

"Supervisors are not liable for Eighth Amendment claims brought under section 1983 on a respondeat superior theory." *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990). Personal involvement of supervisory officials, like that of Sheriff Moore, constitutes the touchstone of their liability. In other words, "if the acts complained of were done at the direction or with the knowledge or consent of a defendant supervisor then the defendant supervisor can be held liable." *Howard v. Adkinson*, 887 F.2d 134, (8th Cir. 1989). "But '[i]t is not enough merely to find that a reasonable person would have known [about the risk], or that [the officer] should have known' about the risk." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 n. 8 (1994)).

"Instead, [Smith] has to show that [Moore] "was actually aware of a serious medical need, but deliberately disregarded it." *Corwin*, 829 F.3d at 699 (quoting *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009)); *see Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir.2007) (in § 1983 action, prison officials cannot be held liable under respondeat-superior theory; officials must know of and disregard excessive risk to inmate health and safety); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (general responsibility for supervising prison operations is insufficient to establish personal involvement required for § 1983 liability; official who is not involved in medical decisions and has no medical expertise cannot be liable for medical staff's diagnostic decisions). Smith's conclusory allegations that Moore failed to supervise jail staff and was "reckless" in allowing them to deny medical treatment (Filing 1, p. 25) are insufficient to state a claim upon which relief may be granted.

Smith also alleges that Iverson "failed to adequately supervise defendant Long" (Filing 1, p. 53), but no facts are alleged to show that the acts complained of were done at the direction or with the knowledge or consent of Iverson. As with Sheriff Moore, no actionable claim for supervisory liability is stated against U.S. Deputy Marshal Iverson.

### f. Retaliation

Smith generally alleges that he "experienced acts of retaliation." (Filing 1, p. 55) The only retaliatory conduct the court can find from its review of the Complaint allegedly occurred during Smith's first week of confinement at the Saline County jail, when Smith claims he was "housed in solitary confinement for complaining of headaches and dizziness, requesting my blood pressure be checked because it had been over a week since my last dose of medication, and for not receiving any medical treatment for said broken collarbone." (Filing 1, p. 39) Retaliation such as this is actionable as a First Amendment violation.[11] *See*

---

[11] Conceivably, this could also constitute a due process violation. Pursuant to the due process provisions of the Fourteenth Amendment, a pretrial detainee may not be punished prior to a determination of guilt in accordance with due process. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (requiring pretrial detainee to be placed in administrative segregation is punishment; claim that pretrial detainee was denied due process when placed in administrative detention for refusing to work did not lack arguable basis in law and should not have been dismissed prior to service). But "not every disability imposed during ... detention amounts to 'punishment' in the constitutional

*Hartsfield v. Dep't of Corr.*, 107 Fed. App'x 695, 696 (8th Cir. 2004) (unpublished) (finding district court erred in dismissing claim that defendant wrote a retaliatory misconduct report after plaintiff announced his intention to file a grievance against defendant); *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989) (filing of false disciplinary charge against inmate is actionable under § 1983 if done in retaliation for inmate's having filed grievance). Smith, however, has not identified any individual defendant who was responsible for placing him in solitary confinement. Absent such an allegation, there is no actionable claim. *See White*, 865 F.3d at 1081 (§ 1983 plaintiff must show each individual defendant's personal involvement in the alleged constitutional violation); *see also Gard v. Dooley*, No. 4:14-CV-04023-LLP, 2016 WL 5376236, at *32 (D.S.D. Mar. 4, 2016) ("Courts have refused to find retaliation if the prisoner fails to present evidence showing the particular defendant who is alleged to have taken the retaliatory action was aware of, or was affected by, the prisoner's earlier constitutionally protected activity from which retaliatory animus could be inferred."), *report and recommendation adopted*, No. CV 14-4023, 2016 WL 5390111 (D.S.D. Sept. 26, 2016).

g. Due Process

Liberally construing Smith's Complaint, he appears to be claiming that he was denied due process by the State Ombudsman, in failing to conduct a proper investigation into his complaints about inadequate medical treatment, and by the Saline County Attorney, in failing to act on Smith's tort claim against the county. Both claims are frivolous.

Smith alleges, "The failure of the defendant Marshall Lux in his capacity as State Ombudsman ... to adequately train and supervise the defendant Barb Brunkow implicitly or explicitly adopted and implemented careless and reckless policies, customs or practices that included depriving me [of] my right to grievence [*sic*] and due process." (Filing 1, p. 27) As discussed above, such an allegation is not sufficient to state a claim for supervisory liability.

---

sense.'" *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[I]f a particular condition or restriction of ... detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.*

With respect to Brunkow, Smith alleges that he contacted the Ombudsman's office on May 25, 2018, requesting that it investigate his lack of medical treatment at the Saline County jail, but that on June 21, 2018, he received a letter from the Ombudsman's office stating it was closing this case because he was transferred to a federal facility. (Filing 1, p. 44-45, 47) The letter, which was authored by Brunkow, is attached to the Complaint. (Filing 1, pp. 66-67)

The Ombudsman (or Public Counsel) is an officer of the legislative branch of state government.[12] *State ex rel. Shepherd v. Nebraska Equal Opportunity Comm'n*, 557 N.W.2d 684, 691 (Neb. 1997). The powers of the Public Counsel, properly exercised, are purely investigatory and advisory. Neb. Att'y Gen. Opinion No. 102, 1981 WL 129122, at *2 (May 14, 1981); see Neb. Rev. Stat. §§ 81-8,241 *et seq.*

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Smith must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *See Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Smith does not have a protected liberty interest in having his complaint investigated by the Ombudsman. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no liberty interest in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances); *McGrone v. Boyd*, No. 8:18CV233, 2019 WL 2583841, at *3 (D. Neb. June 24, 2019) (holding inmate did not have viable due process claim against warden for ignoring his grievances).

---

[12] As such, legislative immunity may apply. *See Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967).

Smith alleges, "Defendant Tad Eickman in his capacity as attorney of Wilber/Saline County, Nebraska ... implicitly or explicitly adopted and implemented careless and reckless policies, customs or practices that included depriving me [of] my right to grievence [*sic*] and due process." (Filing 1, p. 26) Applicable factual allegations in the Complaint are as follows: "7/9/18 back to Saline County jail. Filed a formal complaint to Saline County jail, and a tort claim. All attempts failed and were discarded by jail staff and/or jail administration. No response." (Filing 1, pp. 48-49) "7/23/18 ... had a family member visit me at Saline County jail. They served the complaint and tort claim to the jail's clerk." (Filing 1, p. 49) "8/1/18 asked about a response to my complaint filed on 7/23/18. I was informed by Sheriff Alan Moore that the matter has been forwarded to the Saline County jail's legal team Tad Eickman." (Filing 1, p. 49) "Still no response from Saline County about the grievence [*sic*] to date." (Filing 1, p. 47)[13]

Even assuming that the right to sue under Nebraska's Political Subdivisions Tort Claims Act ("PSTCA") is a property interest protected by due process, *see Wilson ex rel. Wilson v. Gunn*, 403 F.3d 524, 527 (8th Cir. 2005) (right to sue under Federal Tort Claims Act is a protected property interest), it is not alleged that Eickman interfered with Smith's exercise of that right in any manner. It is merely alleged that Smith did not receive a response to his tort claim. It is the governing body of the political subdivision that considers claims filed under the PSTCA, not the county (or city) attorney, *see* Neb. Rev. Stat. § 13-904, and the Act provides that a claimant may withdraw a claim from the governing body's consideration and file suit if no disposition of the claim has been made within six months after it is filed, *see* Neb. Rev. Stat. § 13-906. Thus, Smith does not appear to have suffered any harm.

---

[13] Smith also alleges he filed a claim with the City of Wilber, and erroneously implies that the City has some responsibility for operating the Saline County Jail. (Filing 1, pp. 19, 25, 26, 30) Smith also misidentifies Eickman as the "City Attorney of the City of Wilber/Saline County." (Filing 1, p. 13) In any event, no actionable claim is stated against the City of Wilber or against Eickman in his purported official capacity of City Attorney.

h. HIPAA

Smith alleges that on May 24, 2018, "Saline County jail administrator Drake and medical staff Mullen violated the Hipaa compliance law for healthcare by emailing over 85 pages of medical documentation dating back to April 2017 way before [Smith] being in USMS custody." (Filing 1, p. 44) These presumably were the medical records that Long forwarded to USMS headquarters on that date for a second opinion as to whether Smith required surgery.

Even if there was a violation of the Health Insurance Portability and Accountability Act ("HIPAA"), there is no private right of action under HIPAA. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Shepard v. Nebraska*, No. 4:15CV3165, 2016 WL 1559570, at *3 (D. Neb. Apr. 18, 2016). "Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action." *Adams v. Eureka Fire Protection District*, 352 Fed. App'x 137, 139 (8th Cir. 2009).

2. Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") provides the exclusive remedy for tort claims against the United States and its employees acting within the scope of their employment.[14] *Brown v. Armstrong*, 949 F.2d 1007, 1012-13 (8th Cir.1991). Thus, the Act states:

> An action shall not be instituted upon a claim against the United States for money damages for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency .... The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

---

[14] Federal courts have exclusive jurisdiction for actions brought pursuant to the FTCA. *See* 28 U.S.C. § 1346(b)(1).

The implementing regulation clarifies that "a claim shall be deemed to have been presented" if the relevant agency receives either "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2. "Because presentment is a jurisdictional prerequisite to suit under the FTCA, and jurisdiction is a threshold issue for the district court to decide, the district court may appropriately resolve legal and factual questions determinative of jurisdiction and may dismiss the case under Federal Rule of Civil Procedure 12(b)(1) if the FTCA requirements are not met." *Daniels v. United States*, 135 F. App'x 900, 901 (8th Cir. 2005). It is the plaintiff's burden to plead and prove that federal jurisdiction exists under the FTCA. *See Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir.1993).

Smith alleges that "claims were filed with Internal Affairs (U.S.M.S.) <Internal. Affairs@usdoj.gov> with[in] one year of the facts giving rise to the allegations of this complaint and internal affairs (USMS) has not acted upon said claim." (Filing 1, p. 21) Smith does not allege when his claim was presented to the U.S. Marshals Service, nor does he describe the content of the claim. Several emails Smith's mother sent to Internal Affairs are attached to the Complaint (Filing 1-2), but none satisfy the claim presentment requirement of § 2675(a).

Even if Smith could allege sufficient facts to show that his administrative remedies were exhausted before filing suit, the government cannot be held liable for U.S. Deputy Marshal Long's alleged communication of false reports concerning Smith's medical condition because the FTCA's limited waiver of sovereign immunity does not extend to claims against the United States "arising out of ... misrepresentation [or] deceit," which are explicitly excepted from the scope of the Act. 28 U.S.C. § 2680(h). *See Philippeaux v. United States*, No. 10 CIV. 6143 NRB, 2011 WL 4472064, at *5 (S.D.N.Y. Sept. 27, 2011) (district court lacked jurisdiction to hear FTCA claim that Veterans Administration personnel misrepresented plaintiff's condition and falsified a medical report); *Gifford v. Rathman*, No. 1:14-CV-1179-SLB-JEO, 2017 WL 4340454, at *14-15 (N.D. Ala. Sept. 29, 2017) (inmate's claim that Bureau of Prisons personnel falsified his medical records was barred by § 2680(h) of the FTCA). This holds true even if the allegations made against Long are treated as stating a claim for either negligent or intentional infliction of emotional distress. *See Philippeaux,* 2011 WL 4472064, at *10 ("[U]nder the FTCA, plaintiff cannot avoid the exemptions in 28 U.S.C. § 2690(h) merely by recasting his claim under another name. Even if plaintiff suffered

mental distress as a result of the VA doctors' allegedly false diagnosis, the proposed emotional harm claims arise out of the misrepresentation and deceit and, accordingly, are barred by Section 2690(h)) (citation omitted). Thus, Long will be dismissed from the lawsuit.

Smith's allegation that U.S. Deputy Marshal Iverson failed to supervise Long does not provide the basis for a damage claim against the United States, either. "If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680(h) bars the claim." *Sheridan v. United States*, 487 U.S. 392, 406 (1988) (Kennedy, J., concurring in judgment). Iverson will also be dismissed from the lawsuit.

## B. State-Law Claims

This court's ability to entertain Smith's claims arising under Nebraska tort law cannot be predicated on 28 U.S.C. § 1331 (original jurisdiction) or 28 U.S.C. § 1332 (diversity jurisdiction),[15] but instead must depend on 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This statute "affords a federal court the power to exercise supplemental jurisdiction over a state-law claim if it 'derive[s] from a common nucleus of operative fact' as a claim otherwise within the court's jurisdiction." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 932 (8th Cir. 2016) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'" *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) (quoting *Gibbs*, 383 U.S. at 725). "Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions." *Id.*

---

[15] Although Smith currently is incarcerated in Kansas, there is a rebuttable presumption that his domicile is Nebraska. *See Jones v. Hadican*, 552 F.2d 249, 250-51 (8th Cir. 1977).

One statutory exception is that "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c)(3). Here, the only plausible claim over which the court has original jurisdiction is the § 1983 claim against Dr. Miller, in his individual capacity, for his alleged deliberate indifference to Smith's medical needs and falsification of medical records. All federal claims against the other defendants will be dismissed. A question thus arises as to whether the court can decline to exercise supplemental jurisdiction over any state-law claims that are alleged against those defendants.

"Section 1367(c)(3) does not specify if it is meant to apply when the court has dismissed all federal claims against some parties, but retains a federal claim against other parties." *Foster v. Cerro Gordo Cty.*, No. C14-3013-LTS, 2016 WL 355082, at *9 (N.D. Iowa Jan. 28, 2016), *aff'd*, 698 F. App'x 862 (8th Cir. 2017).

> Some district courts have declined to exercise jurisdiction on a party-by-party basis. *See, e.g., Germano v. Dzurenda*, No. 09 Civ. 1316, 2011 WL 1214435, at *20 (D. Conn. Mar. 28, 2011) (dismissing without prejudice state claims against twelve defendants once federal claims against those same twelve defendants were dismissed, even though federal claims in the case remained viable against others); *Lewis v. Sieminski*, No. 08 Civ. 728, 2010 WL 3827991, at *9 (D. Conn. Sept. 22, 2010) (declining to exercise supplemental jurisdiction over state law claims against defendants after dismissing the federal claims against them, even though federal claims against another party continued). In *Rosen v. County of Suffolk*, 121 Fed. Appx. 885 (2d Cir. 2005), the Second Circuit Court of Appeals entered a remand order that stated: "In the event that any of the defendants named in any of the state law claims over which the District Court declined under 28 U.S.C. § 1367(c)(3) to assert supplemental jurisdiction is a party to any claim remaining before the District Court following this remand, the Court should reconsider its election to decline jurisdiction over claims *involving such party*." *Id.* at 887 [emphasis added].[16]

---

[16] *See also Medlin v. City of Algood*, 355 F. Supp. 3d 707, 719 (M.D. Tenn. 2019) ("With the dismissal of Medlin's federal claims against Bilbrey, the Court will not retain jurisdiction over the state law claims against that Defendant because, pursuant to 28 U.S.C. § 1367(c)(3), there is a strong presumption in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims. This holds true even where, as here, federal claims remain against other defendants.") (internal quotations and citations omitted); *Gorenc v. Klaassen*, No. 18-2403-DDC-JPO, 2019 WL 3494230, at *6

Other courts have interpreted Section 1367(c)(3) to be inapplicable when any federal claims remain in the litigation, even if those claims are asserted only against other parties. *See, e.g., Moore v. Natwest Mkts.*, No. 96 Civ. 1166, 1996 WL 507333, at *3 (S.D.N.Y. Sept. 6, 1996) ("Section 1367(c) does not apply when any federal claim exists in the lawsuit against any of the parties."); *Rophaeil v. Aiken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 221567, at *2 (S.D.N.Y. May 2, 1996) ("Since the Court has not dismissed 'all' federal claims from this action ... the plain language of this provision does not apply to the case at bar.").[17] There appears to be no binding [Eighth Circuit] precedent on this issue.

*Id.* (finding that although federal and state law claims remained against city defendants, § 1367(c)(3) would permit court to decline to exercise supplemental jurisdiction over state law claims against county defendants following dismissal of federal claims against them); *but see Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*, 789 F. Supp. 2d 1029, 1058-59 (N.D. Iowa 2011) (questioning whether § 1367(c)(3) applies where federal claim remains pending against another defendant).

Although there is ample authority for declining to exercise supplemental jurisdiction over the state-law claims alleged against defendants other than Dr. Miller, the court will proceed to examine the sufficiency of Smith's allegations regarding those claims. As noted at the outset of this discussion, Smith's state-law claims allegedly arise under the Nebraska Political Subdivisions Tort Claims Act and "under Nebraska common law for intentional

_____

(D. Kan. Aug. 1, 2019) ("The plaintiffs' ongoing federal-law claims against other defendants in this matter do not preclude the court from declining supplemental jurisdiction over the state law claims against [defendants with no actionable federal-law claims pending against them]."); *Cango v. Bergen Cty. Jail Adm'r*, No. CV1810151KMSCM, 2019 WL 1236941, at *5 (D.N.J. Mar. 18, 2019) (dismissing § 1983 claims against jail administrator and warden on initial review for failure to state a claim upon which relief may be granted, and declining to exercise supplemental jurisdiction over state-law claims against these two defendants even though federal claims against other defendants were allowed to proceed).

[17] *But see Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *18-19 (S.D.N.Y. Mar. 29, 2016) (declining to exercise supplemental jurisdiction over state-law claims against only certain defendants following dismissal of federal claims alleged against them).

and/or negligent infliction of emotional distress, conversion, negligent supervision, gross negligence, and civil conspiracy." (Filing 1, p. 19)

The PSTCA "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007). "Where a claim against a political subdivision is based upon acts or omissions of an employee occurring within the scope of employment, it is governed by the provisions of the PSTCA." *Britton v. City of Crawford*, 803 N.W.2d 508, 514 (Neb. 2011); Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA]."). Because Moore, Drake, Mulberry, Mullen, and Eickman are alleged to be officers or employees of Saline County, and because the allegations of Smith's Complaint do not suggest these defendants were acting outside the scope of their employment, the PSTCA applies to any tort claim brought against them.[18]

Smith's tort claims against Dr. Miller, however, are not subject to the PSTCA's provisions. *See Jacobson v. Shresta*, 838 N.W.2d 19, 31 (Neb. App. 2013) (PSTCA only applies to "officer, agents, or employees" of the political subdivision, not to independent contractors),[19] *aff'd*, 288 Neb. 615, 849 N.W.2d 515 (2014); *see* Neb. Rev. Stat. § 13-903(3) ("Employee shall not be construed to include any contractor with a political subdivision."). Smith alleges that Miller is employed by Crete Area Medical Center, and does not allege any

---

[18] The PSTCA requires a claimant to file a tort claim with the governing body of the political subdivision before bringing suit. *Geddes*, 729 N.W.2d at 661. Smith alleges he has complied with this requirement. Under Nebraska law, the filing or presentment of a claim to the appropriate political subdivision, while it is not a jurisdictional prerequisite, is a condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001). Failure to present a claim in compliance with the PSTCA warrants dismissal, *see id.* at 232-33, but such noncompliance must be raised as an affirmative defense. *Wise v. Omaha Pub. Sch.*, 714 N.W.2d 19, 22 (Neb. 2006); *see Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 4599832, at *5 (D. Neb. Sept. 25, 2018).

[19] "An independent contractor is one who, in the course of an independent occupation or employment, undertakes work subject to the will or control of the person for whom the work is done only as to the result of the work and not as to the methods or means used." *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995).

facts to show he acted as Saline County's agent in providing health care to inmates at the county jail.

Because they are employed by the State of Nebraska, Lux and Brunkow also are not covered by the PSTCA. Instead, the State Tort Claims Act ("STCA") applies. "Under Nebraska law, a state official acting within the scope of his or her employment at the time of an alleged tort must be sued in his or her official capacity, and the plaintiff must 'comply with the requisites set out in the [STCA].'" *Montin v. Moore*, 846 F.3d 289, 292 (8th Cir. 2017) (quoting *Bohl v. Buffalo Cty.*, 557 N.W.2d 668, 673 (Neb. 1997)). Consequently, Eleventh Amendment immunity applies, and, as further required by the STCA, Smith's claims against these defendants must be filed in state court. *See id.*, at 293; Neb. Rev. Stat. § 81,8,214 (providing that "[s]uits shall be brought in the district court of the county in which the act or omission ... occurred"). The court therefore lacks subject matter jurisdiction over any state-law claims alleged against Lux and Brunkow, *see Harrington v. Strong*, 363 F. Supp. 3d 984, 996 (D. Neb. 2019), and, because Smith has failed to state a plausible § 1983 claim against these defendants, they will be dismissed from this lawsuit.

### a. Negligence

"Currently, in Nebraska, in a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was a proximate cause of the plaintiff's alleged injuries." *Ewers v. Saunders Cty.*, 906 N.W.2d 653, 662 (Neb. 2018). Liberally construing Smith's Complaint, it is alleged that Dr. Miller made an assessment on May 16, 2018, that Smith's right clavicle fracture was "[n]onsurgical at this point" without conducting any physical examination, and recorded in the treatment notes false findings that Smith's "range of motion is intact in that shoulder" and that Dr. Miller "could not produce any tenderness either." (Filing 1, p. 73) It is claimed that as a result of this alleged misconduct, Smith's surgery was delayed, causing pain and suffering, mental anguish, and additional physical injury. (Filing 1, pp. 40-43, 53-54, 56-57) Thus, a plausible claim for medical malpractice is alleged against Dr. Miller.[20]

---

[20] It should be noted that the alleged falsification of Smith's medical records does not state a claim for fraud or misrepresentation under Nebraska law. "In order to prove fraud or

As previously discussed with reference to Smith's Fourteenth Amendment claim, his conclusory allegation that Nurse Mullen "unjustifiably denied plaintiff adequate medical treatment" (Filing 1, p. 33) does not meet federal pleading standards when there are no supporting facts alleged to show, for example, that Mullen was responsible for any delays in administering Smith's medications. There likewise are no facts alleged to support Smith's claim that Mullen "present[ed] inaccuracies and false truths" to the USMS reviewing physician for the purpose of denying him surgery, (Filing 1, p. 45) or that she conspired with Dr. Miller to accomplish this result.[21]

Smith's general allegation that Sheriff Moore failed "to adequately train and supervise the defendants Mulberry, Drake, Mullen, and Miller" is not sufficient to state a claim for negligence under Nebraska law. "Nebraska law holds that a person charged with negligence must have had knowledge of or be reasonably chargeable with knowledge that the act or omission occasioned danger to another." *Anonymous v. Vella*, No. 8:04CV269, 2006 WL 1401680, at *9 (D. Neb. May 15, 2006). Because Smith does not allege any facts showing that Moore "knew or should have known" of any misconduct on the part of any Defendant, such as Dr. Miller's alleged medical malpractice, no plausible claim for relief is stated. *See*

---

misrepresentation under Nebraska law, plaintiffs must prove: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff did so rely; and (6) that he or she suffered damage as a result." *COR Clearing, LLC v. Calissio Res. Grp., Inc.*, No. 8:15CV317, 2017 WL 5157607, at *7 (D. Neb. Nov. 6, 2017) (citing *Freeman v. Hoffman La Roche, Inc.*, 618 N.W.2d 827, 844-45 (Neb. 2000)), *aff'd*, 918 F.3d 579 (8th Cir. 2019). "[F]or both negligent and fraudulent misrepresentation, the plaintiff must be a recipient of the misrepresentation to show reliance." *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 328 (Neb. 2010);

[21] "A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. A claim of civil conspiracy requires the plaintiff to establish that the defendants had an expressed or implied agreement to commit an unlawful or oppressive act that constitutes a tort against the plaintiff." *Salem Grain Co., Inc. v. Consol. Grain & Barge Co.*, 900 N.W.2d 909, 923-24 (Neb. 2017) (footnotes omitted). "[A] 'conspiracy' is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. Without such underlying tort, there can be no claim for relief for a conspiracy to commit the tort." *Id.* at 924 (footnotes omitted).

*id.* With respect to Mulberry, Drake, and Mullen, there also not sufficient facts alleged to show that these Defendants committed a tortious act or omission, which is an underlying requirement for a failure-to-train or failur-to-supervise claim. *See Rand v. Stanosheck*, No. 8:18CV481, 2019 WL 3777956, at *4 (D. Neb. Aug. 12, 2019). Smith has also failed to allege any facts to support a tort claim against County Attorney Eickman.

### b. Emotional Distress

"To recover for intentional infliction of emotional distress, a plaintiff must prove the following: (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it." *Iwanski v. Gomes*, 611 N.W.2d 607, 611 (Neb. 2000). "Severe emotional distress is also an element of the tort of negligent infliction of emotional distress." *Kant v. Altayar*, 704 N.W.2d 537, 540 (Neb. 2005). On the facts alleged, Smith's emotional distress was not sufficiently severe to permit a separate claim for relief, but it may be considered as a element of damages in his medical malpractice claim.

### c. Conversion

Conversion is "any unauthorized or wrongful act of dominion exerted over another's property which deprives the owner of his property permanently or for an indefinite period of time." *Brook Valley Ltd. P'ship v. Mut. of Omaha Bank*, 825 N.W.2d 779, 787 (Neb. 2013). Smith does not allege that he was deprived of any property, but instead claims that "Defendants acted intentionally or in reckless disregard of probable consequences in the exercise of dominion or control over plaintiff['s] personal health ...." (Filing 1, p. 33) This is not a recognizable cause of action.

### IV. CONCLUSION

Liberally construed, Smith's Complaint contains sufficient facts to state plausible claims for relief against Defendant Miller, in his individual capacity, for inadequate medical

treatment under § 1983 and for medical malpractice under Nebraska tort law. No other actionable claim is stated, however.

IT IS THEREFORE ORDERED:

1.  All claims alleged against any Defendant other than Troy Miller are dismissed without prejudice, and the clerk of the court shall modify the docket sheet to reflect that these Defendants are no longer parties to the action.

2.  This action shall proceed solely against Defendant Troy Miller, and only upon the following claims alleged against him in his individual capacity: (1) a Fourteenth Amendment claim for inadequate medical treatment based upon Defendant Miller's alleged failure to examine Plaintiff's shoulder, and his alleged falsification of the medical record; and (2) a claim for professional negligence under Nebraska law. All other claims alleged against Defendant Miller, including all official-capacity claims, are dismissed without prejudice.

3.  The clerk of court is directed to obtain the last known addresses for Defendant Troy Miller from the Marshals Service for service of process on him in his individual capacity.

4.  Upon obtaining the necessary address, the clerk of court is directed to complete and issue summons for Defendant. The clerk of court is further directed to deliver the summons, the necessary USM-285 Form, copy of Plaintiff's Complaint (Filing 1), and copy of this Memorandum and Order to the Marshals Service for service of process on Defendant. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).[22]

---

[22] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson,* 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed.

5.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6.    Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7.    The clerk of court is directed to set the following pro se case management deadline: December 16, 2019: check for completion of service of process.

DATED this 16th day of September, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).